THE BANK OF STEWART COUNTY *v.* ADAMS.

1. The presumption of law being that the holder of a negotiable instrument became such before its maturity and for value, without notice of defenses by the maker, and the evidence introduced in this case by the defendant being entirely insufficient to show that the plaintiff acquired title to the note sued on with knowledge or notice of the alleged infirmities in its consideration, and the only legitimate conclusion from the evidence, taken all together, being that the plaintiff took the note before its maturity *bona fide* and for value, there should have been a verdict in its favor.

2. Upon the evidence disclosed by the record, the verdict for the defendant cannot be sustained; and therefore, upon the substantial merits of the case, irrespective of the several errors alleged to have been committed by the presiding judge, a new trial should have been granted.

August 5, 1895.

Complaint on note. Before Judge BUTT. Chatta-hoochee superior court. September term, 1894.

WATTS & HICKEY, C. J. THORNTON and McNEILL & LEVY, for plaintiff. BRANNON, HATCHER & MARTIN and EUGENE WYNN, for defendant.

ATKINSON, Justice.

The note sued upon was, in the first instance, executed in favor of J. E. Bivins by the defendant, as part payment for certain of the stock of the Bank of Cordele held by Bivins, and which the defendant bought from him. There was a collateral agreement between Bivins and the defendant, to the effect that if the defendant became dissatisfied within a given time with his purchase, Bivins would repurchase his stock at the contract price. After Bivins became the holder of the note, he indorsed it in blank, and under this indorsement it was

v 96-34

delivered to Murphey. Murphey then indorsed the paper, as security, and together with the indorsement, delivered to the present plaintiff a letter containing a guarantee of the paper. Upon the strength of this indorsement and this collateral undertaking, the plaintiff, before due and in the regular course of business, discounted this paper. At maturity it was presented for payment to the defendant, and payment was refused. A suit having been brought thereon, he filed a plea of the general issue; further plea of failure of consideration; further plea that the plaintiff was not a *bona fide* holder for value without notice of equities between himself and the payee, but on the contrary, took the paper with full notice of his defense and of the nature of it. Upon the trial of the case a verdict was had for the defendant. The plaintiff thereupon moved for a new trial, and this motion was overruled. It appears from the record, that Bivins, the payee of this note, overreached the defendant; and if the controversy were between these two, there is little doubt that the defendant should prevail. The question, then, was upon the sufficiency of the evidence to overcome the presumption of law that the holder of this paper became such for value, before maturity, and without notice of any defense to it. There is no doubt from the evidence that this plaintiff came into the possession of this paper in the due course of business before maturity; and the whole question turns upon whether or not the circumstances attendant upon its reception of this paper were such as to have put it on notice that the maker had a defense thereto. The payee of this paper, the indorsee Murphey, and the cashier of the plaintiff's bank, upon whose statement the paper was finally discounted by the bank, were all brothers-in-law, Murphey and Mardre, the cashier of the plaintiff's bank, marrying sisters of Bivins, the payee. There is some evidence that at the time the pa-

per was first offered for discount to the plaintiff, it was refused. It was then returned to Murphey, who wrote to the plaintiff the following letter: "Your favor of 5th instant received. I was placing the Adams note to assist Joe, and did not intend to indorse it, but as you were under that impression, and as he is unquestionably good, I hereby guarantee payment of note executed by T. M. Adams for $1,354.17, April 2d, 1891, in favor of J. E. Bivins, and indorsed by said J. E. Bivins to Bank of Stewart County, maturing ten months after date. Said note secured by 14 shares capital stock Bank of Cordele. I don't want to put my name on the back of the note, because it might be the cause of some extension wanted, though I think it will be promptly paid. Keep this letter as your guarantee. I return Adams' note herein." Upon the receipt of this letter, the plaintiff discounted the note; and it is fairly inferable, from the character of Murphey's indorsement on the back of the note and the contents of the letter above quoted, that the bank's refusal to discount the note in the first instance was for the want of a regular indorsement on the part of Murphey. Bivins had been cashier of the Bank of Cordele, Murphey cashier of the Bank of Americus, and Mardre cashier of the Bank of Stewart County. We have looked through this record in vain for any evidence of notice to the plaintiff of any equities between the maker and the payee of this paper. The only circumstance from which bad faith is inferable at all is the circumstance of relationship between the persons through whose instrumentality this paper came to the hands of the plaintiff. We do not think this circumstance alone sufficient to rebut the presumption of good faith raised by the law in favor of a person who takes in the due course of trade negotiable promissory notes. Such instruments are not to be defeated upon suspicion alone, nor ought the integrity of

such papers to stand impeached except upon clear and satisfactory evidence. This does not imply that in all cases direct and positive evidence of bad faith is essential to the impeachment of such a paper; but whether positive or circumstantial evidence be relied upon, it ought, in the judgment of the jury, to preponderate when weighed with the presumption established by law in favor of the holder of such paper. We think the evidence falls far short of actual notice to this plaintiff, and far short of such circumstances indicating bad faith as ought to have put a prudent man upon inquiry in regard thereto. We think, therefore, upon the substantial merits of the transaction, the circuit judge should have granted a new trial; and it is accordingly so ordered.                    *Judgment reversed.*